US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

SEP 27 2019

DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 19mj 5041 |
| Maki Takehisa | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __4-21-14 through 3-2-15__ in the county of __Washington__ in the
__Western__ District of __Arkansas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C., Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(A)(v)(II). | Aiding and Abetting in Alien Smuggling |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI, Special Agent Justin A. Ledzinski
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/27/19

_____
*Judge's signature*

City and state: Fayetteville, Arkansas

Erin L. Wiedemann, Chief U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Justin Ledzinski, Special Agent with the Federal Bureau of Investigation (FBI) being first duly sworn, do hereby depose and state as follows:

### I.  Introduction

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been a Special Agent with the FBI for over thirteen (13) years. I am currently assigned to the Little Rock Office, Fayetteville Resident Agency of the FBI, and have been since November of 2007. From 2005 to 2007, I was assigned to the Laredo, Texas Resident Agency of the FBI. In connection with my official FBI duties, I investigate criminal violations of the Controlled Substances Act. I have received specialized training in the enforcement of federal narcotics laws. My training and experience has involved, among other things, (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealment of proceeds of drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence. I have also received training in investigations involving the interception of wire and electronic communications and have participated in numerous investigations involving the interception of wire and electronic communications. Based on my training and experience, I have become familiar with the manner in which narcotics traffickers conduct their drug-related businesses, including the methods employed by narcotics dealers to import and distribute narcotics, and their use of coded language to refer to narcotics, drug proceeds, and other aspects of narcotics trafficking. I have received specialized training from the FBI relating to the investigation of drug and money laundering offenses and have been personally involved in several investigations involving the unlawful possession, manufacture, and distribution of controlled substances, including cocaine, methamphetamine, marijuana, and money laundering. My training and experience as a law enforcement officer, and

Page **1** of **6**

my conversations with state, federal, and law enforcement officers in other countries form the basis of the opinions and conclusions set forth below.

1. This affidavit is being submitted in support of a criminal complaint for Maki Takehisa. As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested arrest warrant.

## II. Probable Cause

1. In approximately April of 2017, agents began investigating Maki Takehisa for her suspected involvement in fraudulent adoptions in the Northwest Arkansas area, primarily in Washington County, Arkansas, which is within the Western District of Arkansas. The FBI received information that Takehisa was assisting others in the inducement of pregnant women to travel to the United States from the Republic of the Marshall Islands (hereinafter the "RMI") and also inducing them to consent to adoptions in the Western District of Arkansas.

2. The Republic of the Marshall Islands is an island country near the equator in the Pacific Ocean, slightly west of the International Date Line. The country's population of 53,158 people is spread out over 29 coral atolls, comprising 1,156 individual islands. The capital and largest city is Majuro.

3. In 1983, the United States entered into a Compact of Free Association (hereinafter, the "Compact") with the RMI government. The United States and the RMI signed an Amended Compact in 2003, which Congress codified at Public Law 108-188.

4. Section §141 of the Compact grants RMI citizens the ability to freely enter, and take up employment within the United States. Section §141(b) prohibits RMI citizens

from entering the United States under the Compact agreement if their travel is for the purpose of adoption. In pertinent part, the Compact states, "(b) Notwithstanding subsection (a) of this section, a person who is coming to the United States pursuant to an adoption outside the United States, or of adoption in the United States, is *ineligible* for admission under the Compact and the Compact as amended."

5. During the investigation, Special Agents from the United States State Department travelled to the RMI to conduct interviews of four women who were suspected of travelling to the United States in violation of the Compact. All four women told the agents that they travelled to the United States while they were pregnant for the purpose of consenting to adoptions in the United States. Two of the women, RMJ and DJ, stated that Takehisa and others offered to pay them $10,000 in United States Currency to travel to the United States and consent to an adoption.

6. Specifically, RMJ stated that Takehisa offered to pay her $10,000, but that she was only paid $6,000. RMJ stated that Takehisa was the person who handed her the money in cash. RMJ also stated that she believed that Takehisa had paid for her airline tickets to the United States and then also paid for her airline tickets to travel back home to the RMI.

7. I reviewed bank records, credit card records, airline records, and immigration records during the course of my investigation. I discovered that RMJ traveled to the United States on April 21, 2014. I also discovered that she gave birth to a baby boy on July 2, 2014 at Willow Creek Women's Hospital in Johnson, Arkansas. I subpoenaed records from the Washington County Clerk's Office that showed the adoption of the

baby was completed on July 8, 2014. Finally, I reviewed airline and immigration records that showed that RMJ travelled back to the RMI on August 10, 2014.

8. RMJ's travel to the United States, adoption of her baby, then almost immediate travel back to the RMI shows that the sole purpose of her travel to the United States was to consent to an adoption. This travel was in violation of the Compact. Finally, Takehisa's offer and payment of United States Currency was clearly for the purpose of inducing RMJ to travel to the United States in violation of the Compact, which is also a violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv). Title 8, United States Code Section 1324(a)(1)(A)(iv) states in pertinent part that: "any person who…encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law…shall be punished as provided in subparagraph (B)."

9. DJ was another Marshallese woman whom the agents from the United States State Department interviewed. She stated in her interview that Takehisa promised to give her $10,000 if she agreed to travel to the United States and consent to an adoption. She also stated that she believed that Takehisa paid for her travel to the United States. She stated that while she was waiting to give birth in Arkansas, she lived in a house that was owned by Takehisa's relatives in Springdale, Arkansas. DJ stated that there were about ten other people who also resided in the house in Springdale, and that she did not have her own room or bed. DJ also stated that Takehisa paid her approximately $4,000 in cash at the hospital on the day her baby was born.

10. Through my review of records, I discovered that DJ traveled to the United States on March 2, 2015. I confirmed that she gave birth to a baby boy on May 22, 2015 at Willow Creek Women's Hospital in Johnson, Arkansas. I also discovered that Takehisa withdrew $3,700 in cash from her bank account on May 22, 2015, the same day DJ gave birth to a baby boy at Willow Creek Women's Hospital. I subpoenaed records from the Washington County Clerk's Office that showed the adoption of the baby was completed on May 28, 2015. Finally, I reviewed airline and immigration records that showed that DJ travelled back to the RMI on June 9, 2015. I confirmed that Takehisa purchased DJ's return ticket to the RMI using an account in the name "Maki Takehisa" from Bank of America.

11. DJ's travel to the United States, adoption of her baby, then almost immediate travel back to the RMI shows that the sole purpose of her travel to the United States was to consent to an adoption. This travel was in violation of the Compact. Finally, Takehisa's offer and payment of United States Currency was clearly for the purpose of inducing DJ to travel to the United States in violation of the Compact, which is a violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv).

12. I believe, based on my training, experience, and knowledge of this investigation, that the foregoing establishes probable cause that Maki Takehisa, aided and abetted by others known and unknown, induced RMJ and DJ to come to the United States in violation of the Compact and the Immigration and National Act, all in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and (a)(1)(A)(v)(II).

Case 5:19-cr-50079-TLB   Document 1   Filed 09/27/19   Page 7 of 7 PageID #: 12

_____
Justin Ledzinski, Special Agent
Federal Bureau of Investigation

AFFIDAVIT subscribed and sworn to before me this \_\_27th\_\_ day of September 2019.

_____
Honorable Chief Magistrate Judge Erin Wiedemann
Western District of Arkansas

Page **6** of **6**